■ MICHAEL HENDERSON et al., as Limited Administrators of the Estate of JOSEPH R. HENDERSON, Deceased, Respondents, v UNITED PARCEL SERVICE, INC., Appellant, et al., Defendant. [675 NYS2d 715] —Carpinello, J. Appeal from an order of the Supreme Court (Torraca, J.), entered October 2, 1997 in Ulster County, which denied, *inter alia*, a motion by defendant United Parcel Service, Inc. to dismiss plaintiffs' claim for punitive damages.

Plaintiffs commenced this wrongful death action after their five-year-old son died as a result of injuries he sustained when a delivery truck owned by defendant United Parcel Service, Inc. (hereinafter defendant) and operated by one of its employees tragically struck him while backing up in the driveway of his home. Thereafter, Supreme Court granted plaintiffs leave to amend their complaint to, *inter alia*, increase the ad damnum clause for punitive damages from $2 million to $10 million and plaintiffs served a second amended complaint incorporating the requested change. While its appeal from that order was pending in this Court, defendant moved pursuant to CPLR 3211 (a) (7) to, *inter alia*, strike the punitive damages claim from the ad damnum clause in the second amended complaint. Supreme Court denied the motion without prejudice to renewal after completion of discovery and resolution of the appeal from its prior order. Defendant appeals from the denial of its motion to strike the request for punitive damages.

Initially, because this Court ultimately reversed Supreme Court's order granting plaintiffs leave to amend their complaint (245 AD2d 789), the viability of plaintiffs' punitive dam-

ages claim must be determined by examining the allegations made in the original complaint. Further, even though the motion on appeal is a CPLR 3211 motion, we note that: "where the moving party offers matters extrinsic to the pleadings, such as supporting affidavits, the court, on a motion to dismiss brought pursuant to [CPLR 3211 (a) (7)] need not assume the truthfulness of the pleaded allegations * * * Instead, 'the criterion is whether the proponent of the pleading [actually] has a cause of action, not whether he has [properly] stated one' ". (*Kaufman v International Bus. Machs. Corp.*, 97 AD2d 925, 926, *affd* 61 NY2d 930, quoting *Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [citation omitted].) In addition, we evaluate plaintiffs' claim for punitive damages mindful that such damages are appropriate only where defendant's conduct can be found to be "morally culpable, or * * * actuated by evil and reprehensible motives" (*Walker v Sheldon*, 10 NY2d 401, 404).

The claim for punitive damages is premised upon defendant's alleged recklessness in failing to adequately instruct its employees about backing up and in failing to equip its vehicles with either a sound device to alert the public of their presence or a rear-mounted blind-spot mirror despite its knowledge that these failures caused similar accidents in the past. To support this claim, plaintiffs attached to their bill of particulars newspaper articles which make reference to a prior similar accident involving one of defendant's vans which occurred in August 1994 in Washington.

A review of the record compels the conclusion that these facts, even if true, do not constitute conduct "so outrageous as to evince a high degree of moral turpitude * * * [so] as to imply a criminal indifference to civil obligations" (*Zarin v Reid & Priest*, 184 AD2d 385, 388; *see, Walker v Stroh*, 192 AD2d 775, 776; *cf., Rahn v Carkner*, 241 AD2d 585, 586). Specifically, in support of its motion defendant submitted a June 17, 1996 notice coincidentally published just one day prior to the subject accident in which the National Highway Traffic Safety Administration solicited comments about potential rulemaking on whether convex mirrors should be required to be mounted on the left rear-top corner of box-style delivery vans. In this notice, the Safety Administration observed that "[e]xternal alarms have been found to be ineffective deterrents for very young children, who do not understand the sound and may even be attracted to the noise". On the subject of mirrors themselves, the notice states that "the small image size in the mirror, the distortion of the image, and the task of using the left side mirror to see the image in the rear mounted mirror

may make it difficult for drivers to reliably detect objects and small pedestrians". The Safety Administration concluded that it may take two years to determine "the extent to which low cost mirror systems can improve the driver's view", notwithstanding the fact that the agency had previously enlisted the assistance of the US Consumer Product Safety Commission to gather data on the issue.

Based upon the incomplete state of research on the effectiveness of the claimed safety device at the time of the accident, plaintiffs are incapable of establishing that the need for such a safety device had been " 'well known' " for some time and had been required by " 'established standards' " such that the failure to equip the van with such a device would support a claim for punitive damages (*see, Dumesnil v Proctor & Schwartz*, 199 AD2d 869, 871). Accordingly, the claim for punitive damages should have been stricken from the ad damnum clause as a matter of law.

Mercure, J. P., Peters, Spain and Graffeo, JJ., concur. Ordered that the order is modified, on the law, with costs to defendant United Parcel Service, Inc., by reversing so much thereof as denied the motion seeking to strike plaintiffs' demand for punitive damages; motion granted to that extent and said claim dismissed; and, as so modified, affirmed.