| EXRP 14 Holdings LLC v LS-14 Ave LLC |
|:---:|
| 2024 NY Slip Op 33568(U) |
| October 7, 2024 |
| Sup Ct, NY County |
| Docket Number: Index No. 652698/2022 |
| Judge: Melissa A. Crane |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     HON. MELISSA A. CRANE                    PART            60M

                                              _Justice_

-----------------------------------------------------------------X

EXRP 14 HOLDINGS LLC

                              Plaintiff,

                    - v -

LS-14 AVE LLC,

                              Defendant.

-----------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 652698/2022 |
| MOTION DATE | 02/09/2024, 02/09/2024 |
| MOTION SEQ. NO. | 009 010 |

### DECISION + ORDER ON MOTION

The following e-filed documents, listed by NYSCEF document number (Motion 009) 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 271, 272, 273, 274, 275, 276, 277, 278, 279, 280, 281, 282, 299, 300, 306

were read on this motion to/for                    PARTIAL SUMMARY JUDGMENT                    .

The following e-filed documents, listed by NYSCEF document number (Motion 010) 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 269, 270, 283, 284, 285

were read on this motion to/for                    SUMMARY JUDGMENT(AFTER JOINDER                    .

The court consolidates motion sequence numbers 009 and 010 for disposition.

Plaintiff EXRP 14 Holdings LLC alleges that defendant LS-14 Ave LLC breached a purchase and sale agreement (PSA) to construct and convey to plaintiff a completed retail unit. Defendant moves for partial summary judgment dismissing plaintiff's claims for specific performance, tortious interference with contract, and unfair competition (motion sequence number 009). Plaintiff moves for summary judgment on its claim for breach of contract and dismissing defendant's sole remaining counterclaim, breach of the implied covenant of good faith and fair dealing (motion sequence number 010).

Plaintiff alleges that it entered into a 12-year lease worth more than $20 million with a prospective tenant for the retail unit. Ultimately, the tenant did not rent the unit. Plaintiff alleges

652698/2022  EXRP 14 HOLDINGS LLC vs. LS-14 AVE LLC
Motion No.  009 010                                                          Page 1 of 12

1 of 12

that defendant refused to complete renovations on the unit, causing the tenant to terminate the lease. Plaintiff also claims that defendant sought to keep the unit for itself and rent it to the same tenant.

The party moving for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, through admissible evidence eliminating all material issues of fact, thus showing that a trial is not required (CPLR 3212 [b]; *Smalls v AJI Indus., Inc.*, 10 NY3d 733, 735 [2008]). If the moving party satisfies this standard, the opposing party successfully opposes the motion by producing evidence showing that there are material issues of fact that can only be resolved at trial (*Morales v D & A Food Serv.*, 10 NY3d 911, 913 [2008]; *Hyman v Queens County Bancorp, Inc.*, 3 NY3d 743, 744 [2004]). In considering the motion, the court accepts the opponent's version of the facts as true and construes the evidence in the light most favorable to that party (*Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 37 [2004]). If the moving party fails to make the prima facie showing, the court must deny summary judgment despite any insufficiency in the opposition (*Roman v Hudson Tel. Assoc.*, 15 AD3d 227, 228 [1st Dept 2005]).

The part of defendant's motion to dismiss plaintiff's specific performance claim and the part of plaintiff's motion to dismiss defendant's claim for breach of the implied covenant of good faith and fair dealing have already been resolved. Previously, this court granted defendant's motion to dismiss plaintiff's claim for specific performance, cancelled plaintiff's notice of pendency, and ordered defendant to return plaintiff's $2.8 million dollar deposit (*EXRP 14 Holdings LLC v LS-14 Ave LLC*, 2024 WL 3654028 [Sup Ct, NY County 2024]; NYSCEF 299, interim order dated 3/12/24). The court ruled that attorneys' fees and statutory interest, if any, would be determined in the future (*id.*), and later determined those amounts (see EDOC 305).

652698/2022 EXRP 14 HOLDINGS LLC vs. LS-14 AVE LLC
Motion No. 009 010

Page 2 of 12

[* 2]

INDEX NO. 652698/2022

RECEIVED NYSCEF: 10/07/2024

In addition, on June 18, 2024, the First Department dismissed defendant's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing (*EXRP 14 Holdings LLC v LS-14 Ave LLC,* 228 AD3d 498, 498, 499-500 [1st Dept 2024]).

    I.    <u>Defendant's Motion for Summary Judgment</u>

Turning first to the remainder of defendant's motion, a claim of tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third party's breach of contract without justification, actual breach and damages (*Vigoda v DCA Prods. Plus Inc.,* 293 AD2d 265, 266 [1st Dept 2002]).

To support its tortious interference cause of action, plaintiff claims that: (1) defendant knew that plaintiff had a tenant and a lease for the unit once it was completed, (2) that defendant purposefully delayed the work on the unit so that the lease could not commence, and (3) defendant tried to cut plaintiff out of the lease deal and negotiate its own lease with the tenant.

The record supports plaintiff's tortious interference claim. On December 19, 2022, the tenant wrote plaintiff that as the "Commencement Date" of the lease had not occurred, tenant was electing to terminate the lease per the termination provision (NYSCEF 204). Defendant argues that the tenant's termination of the lease was not a breach, as a party has an absolute right to terminate a contract pursuant to an unconditional termination clause (*Scheer v Elam Sand & Gravel Corp.,* 177 AD3d 1290, 1291 [4th Dept 2019]; *Big Apple Car v City of New York,* 204 AD2d 109, 111 [1st Dept 1994]).

However, Plaintiff correctly points out that a breach by a third party is not necessary. Causing plaintiff to breach its own contract by preventing its performance constitutes tortious interference with a contract (*Italverde Trading, Inc. v Four Bills of Lading,* 485 F Supp 2d 187,

**652698/2022  EXRP 14 HOLDINGS LLC vs. LS-14 AVE LLC**
**Motion No.  009 010**

**Page 3 of 12**

[* 3]

203 [ED NY 2007] [relying on Restatement [Second] of Torts § 766A Intentional Interference with Another's Performance of His Own Contract]; *S & S Hotel Ventures Ltd. Partnership v 777 S.H. Corp.*, 108 AD2d 351, 354 [1st Dept 1985] [tortious interference claim stated although party to contract with plaintiff did not breach contract, but plaintiff did]; *Morris v Blume,* 55 NYS2d 196, 199 [Sup Ct, NY County], *affd* 269 AD 832 [1st Dept 1945]). Here, the record supports that defendant, by unreasonably and purposely delaying renovations, caused PLAINTIFF to breach its contract with tenant. The record supports that defendant prevented plaintiff from delivering the premises on time per its contract with tenant.

Defendant also argues its employees had no knowledge about the lease between plaintiff and the prospective tenant. However, defendant's representative testified that he had "learned that EXRP had found a tenant for the space that they were set to acquire" and that plaintiff had entered into a lease. The representative even knew the identity of the prospective tenant, a bank (NYSCEF 195, Lowry transcript at 320-322). Emails exchanged in May and June 2022 show that the tenant and defendant discussed modifications to the space (NYSCEF 273).

In a letter dated July 6, 2022, defendant wrote plaintiff, "[P]lease promptly provide Purchaser's contact at Prospective Tenant so that Seller may discuss with the Prospective Tenant possible consummation of a lease therewith" (NYSCEF 40). This could be taken as evidence that defendant was attempting to rent the unit to the tenant and cut plaintiff out of the picture.

Defendant claims that even if it had knowledge that a lease existed, it did not know the contents and details of the lease. However, tortious interference only requires actual knowledge that the specific contract exists. It does not require awareness of the details of the contract (*Medtech Prods. Inc. v Ranir, LLC,* 596 F Supp 2d 778, 796 [SD NY 2008]; *see Ahluwalia v St. George's Univ., LLC,* 63 F Supp 3d 251, 266 [ED NY 2014), *affd* 626 Fed Appx 297 [2d Cir

**652698/2022 EXRP 14 HOLDINGS LLC vs. LS-14 AVE LLC**
Motion No. 009 010

**Page 4 of 12**

4 of 12

[* 4]

2015]). Thus, the evidence indicates that defendant had actual knowledge that plaintiff and the prospective tenant had entered into a lease for the unit. Accordingly, defendant has failed to carry its burden to eliminate all issues of fact that it did not tortiously interfere with the lease.

Regarding the unfair competition claim, plaintiff alleges that, under the PSA, the parties had a confidential relationship, and that defendant used plaintiff's confidential information to compete with plaintiff by trying to negotiate its own lease with the tenant. The gravamen of a claim of unfair competition is the bad faith misappropriation of a commercial advantage belonging to another by the exploitation of proprietary information or trade secrets, or its skill, labor, and expenditures (*Krinos Foods, Inc. v Vintage Food Corp.*, 30 AD3d 332, 334 [1st Dept 2006]; *Comprehensive Community Dev. Corp. v Lehach*, 223 AD2d 399 [1st Dept 1996]; *Men Women NY Model Mgt., Inc. v Ford Models, Inc.*, 32 Misc 3d 1236[A], 2011 NY Slip Op 51595[U], *2 [Sup Ct, NY County 2011]).

Defendant argues that plaintiff has adduced no evidence that defendant usurped or misappropriated the lease or plaintiff's relationship with the tenant and that no facts exist to support an argument that LS-14 used any confidential information. Defendant is correct as to the confidential information. Plaintiff has no proof that defendant used plaintiff's CONFIDENTIAL information to compete with it. This court's adverse inference imposed for failure to produce "the handwritten notes, construction progress logs, status checklists and confirmation of completion documents," that are garden variety construction documents, does not provide missing proof for unfair competition. Without the use of confidential information (for which plaintiff has no proof), plaintiff's cause of action for unfair competition is no different than its cause of action for tortious interference with contract. Accordingly, the court dismisses plaintiff's claim for unfair competition because it lacks proof and is duplicative.

652698/2022 **EXRP 14 HOLDINGS LLC vs. LS-14 AVE LLC**
Motion No. 009 010

Page 5 of 12

[* 5]

## 2. Plaintiff's Motion for Summary Judgment

Plaintiff seeks summary judgment on its claim that defendant breached the PSA. Under the PSA, plaintiff was not obligated to close until after the retail unit was completed in accordance with the plans and specifications and after defendant received a TCO and an architect's certificate of completion (NYSCEF 258, § 9.4). The PSA originally set a closing date of March 12, 2022, and expressly provided in all-capital letters that "TIME SHALL BE OF THE ESSENCE" with respect to LS-14's obligation to deliver the unit and close on the sale (*id.*, § 4.1). The parties agreed in writing to extend the closing date five times. The final, time-of-the-essence closing date was May 27, 2022.

The PSA did not close by the fifth amended closing date. On June 28, 2022, defendant sent plaintiff a notice that the former "has satisfied all conditions to Closing and hereby notifies Purchaser that the Closing shall occur on July 6, 2022" (NYSCEF 35, 255, complaint, ex A). On June 30, 2022, plaintiff wrote, rejecting defendant's notice for the reason that the closing date of May 27, 2022 had passed and defendant had not completed the unit (*id.*, ex B). On July 1, defendant wrote back that it had completed the unit pursuant to the PSA and that the closing date was now July 6 (*id.*, ex C). More letters passed and this action ensued.

"[W]here a seller seeks to hold a purchaser in breach of contract, the seller must establish that it was ready, willing, and able to perform on the time-of-the-essence closing date and that the purchaser failed to demonstrate a lawful excuse for its failure to close" (*Donerail Corp. N.V. v 405 Park LLC*, 100 AD3d 131, 138 [1st Dept 2012]). A material breach of a contract by one party excuses the nonbreaching party's performance and prevents the breaching party from bringing a claim under the contract (*EXRP*, 228 AD3d at 499; *Ward Capital Mgt. LLC v New Pelham Parkway N. LLC*, 165 AD3d 477, 478 [1st Dept 2018]).

**652698/2022  EXRP 14 HOLDINGS LLC vs. LS-14 AVE LLC**
**Motion No.  009 010**

**Page 6 of 12**

6 of 12

INDEX NO. 652698/2022

RECEIVED NYSCEF: 10/07/2024

Plaintiff demonstrates entitlement to summary judgment on its breach of contract claim. As the Appellate Division, First Department stated in the opinion dismissing defendant's counterclaim for breach of contract, "it is undisputed that defendant did not outfit the storefront as required under the purchase and sale agreement (PSA) by the time-of-the-essence closing date on May 27, 2022" (*EXRP*, 228 AD3d at 498). "Defendant's failure to be prepared to close by that outside date constituted a material breach excusing performance by plaintiff" (*id.* at 499).

In opposition, defendant argues the following. Prior to the closing date of May 27, 2022, the parties attempted to negotiate a sixth amendment to the PSA. The sixth amendment was intended to extend the closing date and to memorialize the agreements which the parties had reached concerning the renovations requested by the tenant. While these negotiations were ongoing, unbeknownst to LS-14, EXRP entered into a lease with the tenant on June 3, 2022. On June 10, 2022, plaintiff informed defendant that plaintiff had sent the sixth amendment to the authorized signatory on its side for final execution. Days later, however, plaintiff abruptly changed course and refused to execute the sixth amendment or reimburse LS-14 for the expenses it incurred accommodating the changes EXRP expressly requested for its tenant. Defendant notified plaintiff of another closing date. Plaintiff refused to close. Defendant alleges that plaintiff had no intention of ever closing absent a significant reduction in the purchase price.

Assuming that all this is true, it does not present an issue of fact to counter plaintiff's showing of entitlement to summary judgment. Plaintiff was not under an obligation to accommodate defendant's failure to finish construction by the closing dates in the PSA or in the five amendments. Thus, plaintiff is entitled to summary judgment on its breach of contract claim.

Plaintiff seeks to be awarded contract damages and attorneys' fees. Plaintiff submits an expert's damages report in support of its motion (NYSCEF 261). Previously, per the court's

**652698/2022   EXRP 14 HOLDINGS LLC vs. LS-14 AVE LLC**
**Motion No.  009 010**

[* 7]

order, the parties stipulated to exchange opening and rebuttal expert reports (NYSCEF 152). Plaintiff served its independent expert's damages report on September 1, 2023, as agreed (NYSCEF 261). Defendant did not submit a report in rebuttal and did not take the deposition of plaintiff's expert. Accordingly, plaintiff argues, the court should grant it summary judgment on its unrebutted damages calculation.

Plaintiff's expert identifies $11 million in damages. This sum includes plaintiff's $2.8 million deposit that the court ordered defendant to repay. Section 10 of the PSA governs the damages available to plaintiff. If Seller (defendant) defaults in the performance of its obligations and the closing does not occur as a result, "Purchaser (plaintiff) shall be entitled to either" (a), (b), or (c) (NYSCEF 79, ¶ 10.4 at pg. 19).

Section (a) enables Purchaser to terminate the PSA and be reimbursed the downpayment, "upon which Seller shall be released from any further liability to Purchaser hereunder for any other damages of any kind whatsoever, except for the provisions hereof intended to survive the termination of this Agreement" (NYSCEF 79, ¶ 10.4 [a]).

Section (a) continues "provided, however, in the event of Seller Willful Default (as defined below), then, in addition to the downpayment, Seller shall reimburse Purchaser for all of Purchaser's third party out-of-pocket costs and expenses, including attorneys' fees, in an amount not to exceed $250,000.00 in the aggregate in addition to any damages which Purchaser may be entitled to under" section (c) (NYSCEF 79, ¶ 10.4 [a]).

Section (b) is not relevant to this discussion.

Section (c) entitles Purchaser to seek specific performance of Seller' obligations and to commence an action to recover a fair and reasonable amount as damages for a default by Seller "in an amount not to exceed 200% of the Downpayment (unless such default is a Seller Willful

**652698/2022 EXRP 14 HOLDINGS LLC vs. LS-14 AVE LLC**
**Motion No. 009 010**

Page 8 of 12

Default and in such case, there is no limit on recoverable damages so long as such damages are fair and reasonable" and exclude consequential damages (NYSCEF 79, ¶ 10.4 [c]).

The PSA also states:

"Seller and Purchaser further agree that **this** Section 10.2 is intended to and does limit the amount of damages due Purchaser and the remedies available to Purchaser, and shall be Purchaser's exclusive remedy against Seller, both at law and in equity arising from or related to a breach by Seller of its covenants or its obligation to consummate the transactions contemplated by this Agreement"

(NYSCEF 79, ¶ 10.4 at 19).

The reference to Section 10.2 must mean Section 10.4, as "this" section is 10.4 and 10.2 does not exist.

Section (a) contains a reference to section (c). Section (a) means that, if Seller engages in a Seller Willful Default and Purchaser opts for relief under section (a), Purchaser shall recover damages under section (a) and damages under section (c). This is what the PSA provides, even if the Purchaser does not opt for specific performance under section (c) and opts for section (a) instead.

Plaintiff's specific performance claim was dismissed. The court's order has resulted in plaintiff seeking relief under section (a).

Under section (a), plaintiff is entitled to recover the downpayment. The court already ordered that defendant should pay plaintiff that sum with interest. Under section (c), plaintiff may recover an amount not exceeding 200% of the downpayment. The $17 million sought by plaintiff exceeds 200% of the downpayment.

To recover the other damages provided for in section (a), that includes attorneys' fees and damages in section (c), which may exceed 200% of the downpayment, plaintiff must show that defendant committed a Seller Willful Default. This is defined as a "willful refusal" to close in

652698/2022   EXRP 14 HOLDINGS LLC vs. LS-14 AVE LLC
Motion No. 009 010

Page 9 of 12

[* 9]

accordance with the terms of the PSA, provided that the refusal is not due to conditions beyond the Seller's control or unmarketability of title; and Purchaser has satisfied all conditions under the Agreement, is not otherwise in default, and is ready, willing and able to perform all of its obligations under this Agreement (NYSCEF 79, Section 10.4). That plaintiff was excused from performance under the PSA, the First Department has already determined (*EXRP*, 228 AD3d at 499).

Whether defendant engaged in a willful refusal is an issue of fact. Plaintiff brings up the issue for the first time in its reply memorandum of law. The court will not consider arguments raised only in a reply to a summary judgment motion.

Plaintiff also seeks to recover attorneys' fees under section 27.15 of the PSA. This section provides that if either party brings any action against the other in connection with the agreement or related transactions, the prevailing party is entitled to recover from the other party reasonable attorneys' fees and expenses incurred in connection with the prosecution or defense of such action (NYSCEF 79, ¶ 27.15).

Section 10.4 (a) provides that, if the Seller's default constitutes a Seller Willful Default, the defendant must reimburse plaintiff for attorneys' fees. This action is based on defendant's default. Therefore, section 10 (a) governs attorneys' fees in this case. Presumably, section 27.15 would apply where the action was based on something else besides a default.

Moreover, when a contract includes a general provision and a specific provision governing the same subject, the specific provision controls (*Aramony v United Way of Am.*, 254 F3d 403, 413 [2d Cir 2001]). This guiding principle of contractual interpretation applies where there is an inconsistency between the general and the specific, or "even where there is no 'true conflict'" between each provision (*id.* at 413-414 [internal citation omitted]; *McGraw-Hill Educ.*,

**652698/2022 EXRP 14 HOLDINGS LLC vs. LS-14 AVE LLC**
**Motion No. 009 010**

[* 10]

*Inc. v Illinois Natl. Ins. Co.*, 178 AD3d 532, 532 [1st Dept 2019]). Thus, until there is a determination as to whether defendant's default is a Seller Willful Default under the PSA, it is not possible to determine the amount of plaintiff's damages.

The court has considered the parties' remaining contentions and finds them unavailing. Accordingly, it is

ORDERED that defendant's motion for partial summary judgment [MS 09] is granted in part and denied in part; and it is further

ORDERD that the court denies as moot defendant's motion as to plaintiff's claim for specific performance because the court already dismissed this claim in a prior order; and it is further

ORDERED that the court denies that part of defendant's motion seeking dismissal of plaintiff's claims for tortious interference; and it is further

ORDERED that the court grants that part of defendant's motion seeking dismissal of plaintiff's claim for unfair competition; and it is further

ORDERED that plaintiff's motion for summary judgment [MS 10] is granted in part and denied in part; and it is further

ORDERED that the court grants that part of plaintiff's motion on its breach of contract claim; and it is further

ORDERED that the court denies summary judgment on plaintiff's claim for damages and attorneys' fees because the amount of damages depends on whether or not defendant engaged in a willful default; and it is further

ORDERED that the part of plaintiff's motion to dismiss defendant's third counterclaim for breach of the implied covenant of good faith and fair dealing is denied as moot, as that

652698/2022  EXRP 14 HOLDINGS LLC vs. LS-14 AVE LLC
Motion No.  009 010

Page 11 of 12

11 of 12

counterclaim was already dismissed by order of the Appellate Division, First Department; and it

is further

ORDERED that the parties shall appear for a pre-trial conference on October 31, 2024 at

Noon over Microsoft teams.

| 10/7/2024 | | MELISSA A. CRANE, J.S.C. |
|---|---|---|
| DATE | | |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

652698/2022  EXRP 14 HOLDINGS LLC vs. LS-14 AVE LLC
Motion No.  009 010

Page 12 of 12

12 of 12